1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT

8          EASTERN DISTRICT OF CALIFORNIA

9

10   JOSE O. ARTEAGA,                              Case No. 1:22-cv-01292-EPG (PC)

11                       Plaintiff,               FINDINGS AND RECOMMENDATIONS,
                                                  RECOMMENDING THAT THIS ACTION
12         v.                                     PROCEED ON PLAINTIFF'S EIGHTH
                                                  AMENDMENT CLAIMS AGAINST
13   J. GARCIA, *et al.*,                         DEFENDANTS J. GARCIA AND FUGATE
                                                  FOR EXCESSIVE FORCE, PLAINTIFF'S
14                       Defendants.              EIGHTH AMENDMENT CLAIM AGAINST
                                                  DEFENDANT DOE FOR FAILURE TO
15                                                PROTECT, AND THAT ALL OTHER
                                                  CLAIMS AND DEFENDANTS BE
16                                                DISMISSED

17                                                (ECF No. 1).

18                                                OBJECTIONS, IF ANY, DUE WITHIN
19                                                TWENTY-ONE DAYS

20                                                ORDER DIRECTING CLERK'S OFFICE TO
                                                  ASSIGN A DISTRICT JUDGE
21

22         Jose O. Arteaga ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in

23   this civil action pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this

24   action on October 11, 2022. (ECF No. 1).

25         The Court screened the complaint and found "that it fails to comply with Federal Rules of

26   Civil Procedure 18 and 20 because Plaintiff brings unrelated claims against different defendants."

27   (ECF No. 8, p. 2). The Court also noted that Plaintiff's 171 page complaint is confusing and

28

                                                  1

conclusory, and thus, "is subject to dismissal because it does not contain a short and plain statement of Plaintiff's claims." (*Id.*, p. 10).

The Court gave Plaintiff leave to file a First Amended Complaint to cure the deficiencies identified by the Court. (*Id.*, p. 18-19). Specifically, the Court's screening order stated that:

> As Plaintiff's complaint fails to comply with Rules 18 and 20, the Court is not screening every potential claim at this time. As discussed above, the Court will give Plaintiff an opportunity to file an amended complaint on one issue or related issues. Plaintiff may file other unrelated claims in separate lawsuits. If Plaintiff files unrelated claims again in this lawsuit, the Court will screen the first claim and any related issues and recommend that the rest be dismissed without prejudice.
>
> The Court will also provide legal standards relevant to Plaintiff's claims. While the Court is providing legal standards, it is not giving Plaintiff permission to bring all the following claims in this case.

(*Id.*, p. 13). The Court also gave Plaintiff the option to stand on his complaint, subject to the Court screening Plaintiff's first claim (and related claims) and recommending dismissal of the rest of Plaintiff's complaint as unrelated. (*Id.*, p. 19).

After the Court granted Plaintiff an extension of time to file a response to the Court's screening order or First Amended Complaint (ECF No. 10), Plaintiff filed a notice on May 15, 2023, notifying the Court that he wants to stand on his complaint.[1] (ECF No. 11).

For the reasons described below, the Court will recommend that this action proceed on Plaintiff's Eighth Amendment claims against Defendant J. Garcia and Fugate for excessive force and on Plaintiff's Eighth Amendment claim against Defendant John Doe #1 for failure to protect. The Court will also recommend that all other claims and defendants be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

---

[1] Plaintiff's notice includes argument as to why he believes the claims alleged in his related complaint are related. The undersigned will not address any objections raised by Plaintiff. Instead, Plaintiff should file objections to these findings and recommendations, which will be reviewed by the District Judge.

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.   SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff's complaint is one hundred and seventy-one pages. Plaintiff sues twenty-one defendants and brings numerous claims. For clarity, the Court has organized Plaintiff's claims in chronological order.

In Plaintiff's first group of claims, Plaintiff alleges that he was subject to excessive force and retaliation by several correctional officers. Plaintiff alleges that "[t]his is a rare case where higher level officials admitted that Defendants [sic] violated CDCR Policy." (ECF No. 1, p. 6). In support of these claims, Plaintiff attaches a 602 grievance form regarding a February 12, 2019,

incident between Plaintiff and Defendants J. Garcia and A. Fugate. (*See id.* at 26-43 (Plaintiff's Exhibit #1)).

Plaintiff alleges that he had several confrontations with Defendant D. Neve, and other correctional officers at Corcoran State Prison, over the mishandling of Plaintiff's meals. These confrontations led to false accusations that Plaintiff battered an officer after droplets of water hit Defendant Neve's lower leg when Defendant Neve walked by Plaintiff's cell as Plaintiff was mopping. Defendant Neve verbally threatened Plaintiff. Defendants Fugate and J. Garcia arrived and also threatened Plaintiff with violence. Defendants Fugate and J. Garcia ordered Plaintiff to cuff up. Plaintiff complied and was placed in handcuffs behind his back. (*Id.* at 7-8).

Plaintiff was escorted to another housing unit building. Plaintiff states that this was a result of a fabricated battery on a peace officer charge. Defendants Fugate and J. Garcia were primarily responsible for Plaintiff during the escort. Another correctional officer, Defendant John Doe #1, opened the security gate leading to an alley port from 4A to administrative segregation. Plaintiff was ordered to walk through the gate and kept going forward in front of the officers. After making a few steps ahead, one of the officers escorting Plaintiff pulled out a metal object, which made a distinct metal brushing noise, and caused Plaintiff to slightly turn his head towards the officer. At that moment, Plaintiff saw a flash of movement coming from Defendant J. Garcia. Plaintiff then felt a strong blow on the top of his head as Defendant J. Garcia attacked him with a metal object that appeared to be either a metal baton or flashlight. Defendant Fugate threw Plaintiff down and Plaintiff fell to the concrete floor. Defendants J. Garcia and Fugate then started to punch and kick Plaintiff. They continued to strike Plaintiff with the metal object, making Plaintiff immediately gush blood from the top of his head, nose, and lips. Plaintiff felt like the beating lasted an eternity, and Plaintiff almost passed out. Plaintiff had to exert strong effort to stay awake. Plaintiff was helpless and confused as to why he was being attacked even though he was already in handcuffs. (*Id.* at 8-9).

Plaintiff alleges that this was an act of retaliation because Plaintiff had voiced concerns about the tampered meals that made Plaintiff ill and also because of Defendant Neves' false accusations. Further, Plaintiff believes the retaliation was also due to Plaintiff previously filing grievances against CDCR officers and Defendant Neve in the same unit and facility. (*Id.* at 9).

4

Specifically, Plaintiff states that he previously filed a CDC-602 complaint against Defendant Neve on January 30, 2019, which caused Defendant Neve to retaliate against Plaintiff. (*Id.* at 8). In support of these allegations, Plaintiff attaches 602 grievance forms dated July 30, 2019, and January 30, 2019. (*See id.* at 52-56 (Plaintiff's Exhibit # 4)).

After the beating, an officer pushed his alarm and many other officers ran to the scene where they witnessed Plaintiff laying on the floor, bleeding and semi-unconscious due to a concussion. Defendant John Doe #1 just stood there and watched Defendants Garcia and Fugate carry out the assault. Defendant John Doe #1 did not intervene to stop the assault as he was trained to do. Nor did Defendant John Doe #1 report the abuse and illegal misconduct of his co-workers. Defendant John Doe #1 failed to protect Plaintiff as a duty correctional officer. (*Id.* at 9-10).

Plaintiff was then taken to the prison (C.T.C.) medical clinic treatment center to care for his wounds and injuries. On arrival, Plaintiff was treated by nurses to stop the blood from gushing out. A few minutes later, Dr. Clark walked into the room with some officers and asked Plaintiff, "So you got hit in the head, huh?" There were over seven other officers inside the room. After examining Plaintiff, Dr. Clark decided to rush Plaintiff to an outside hospital due to the severity of the injuries. A SQUAT (I.G.I) officer walked inside the room and took pictures of Plaintiff before he was taken to the hospital. (*Id.* at 10).

Plaintiff was taken to an outside hospital for further treatment where Plaintiff was diagnosed with a severe concussion on the top of Plaintiff's head that required many metal staples to close the wound. Plaintiff bled a lot because of his injuries. Plaintiff had two black eyes, a nosebleed, a busted lip, and extreme back and neck pain. Plaintiff also had unusual blurred and double vision. After a CT scan was performed, Plaintiff was diagnosed with an eye socket fracture that also caused a retina detachment. These injuries caused permanent eye damage. Plaintiff later had to endure an additional surgery to reattach the eye retina and other painful procedures and treatments. Plaintiff was told by the eye doctor that Plaintiff might need future surgeries due to aggravated medical problems. Those surgeries might correct Plaintiff's vision to a better condition. Plaintiff's eyesight is severely diminished due to his injuries. Plaintiff experiences partial vision loss, cataracts, headaches and eye pains due to the eye pressure after the

painful surgery that was required in response to the injury. Plaintiff also suffers from eye scarring, headaches, double vision, floaters or stains that appear frequently and bother his view. (*Id.* at 12).

Plaintiff also suffered other physical injuries such as trauma, abrasions, bruises and knots. Furthermore, Plaintiff has suffered mental anguish and psychological trauma, such as an increase in P.T.S.D., and other disorders requiring future psychological treatments. (*Id.* at 12-13).

Elsewhere in Plaintiff's complaint, Plaintiff alleges several claims based on the medical care he received following the incident with Defendants J. Garcia and Fugate.

Plaintiff alleges that his Eighth Amendment right to freedom from cruel and unusual punishment and right to unbiased medical care were violated by Defendant E. Clark, the doctor who evaluated Plaintiff after he was taken to the C.T.C. Plaintiff alleges that Defendant Clark tried to diminish the injuries Plaintiff suffered by not documenting everything Plaintiff told him. Plaintiff also alleges that Defendant Clark's report makes improper assumptions, such as the inability to test Plaintiff's vision due to Plaintiff's injuries (namely the laceration on his head). Defendant Clark very easily could have checked for signs of concussion as well as the state of Plaintiff's vision. Plaintiff also alleges that the fact Defendant Clark's report states that Plaintiff's elevated heart rate following the incident may be related to excitement or amphetamines is a clear example of medical staff protecting custody staff by slandering Plaintiff and calling into question his state of mind. (*Id.* at 23). In support of the allegations against Defendant Clark, Plaintiff attaches CDCR medical progress reports. (*See id.* at 166-171 (Plaintiff's Exhibit #8)).

Plaintiff also alleges that his Eighth Amendment rights to freedom from cruel and unusual punishment and reasonably adequate medical care were violated by Defendant Manish N. Amin, the attending physician at Adventist Health in Bakersfield. Plaintiff was taken to Adventist Health following the incident with Defendants J. Garcia and Fugate. Plaintiff alleges that hospital staff seemed to be in a hurry to get rid of Plaintiff, showed little interest in what Plaintiff had to say and believed the narrative of events pushed by the escorting correctional staff. Plaintiff alleges that he was only at the hospital for one hour and twenty-seven minutes even though his injuries involved head trauma and a facial fracture. Plaintiff also alleges that, because Plaintiff has a history of seizures, he should have been placed in observation to ensure that he did not have an episode. Plaintiff alleges that the inadequate care that he received from Defendant Amin is a

major contributing factor to Plaintiff's continued problems with his eye and need for ongoing medical care. Further, doctors owe an obligation to provide every patient with the best and most thorough medical care possible, regardless of a patient's social status, race, sexual orientation. Due to the lack of adequate medical care, Plaintiff required eye surgery, and will possibly require future corrective surgery. Plaintiff also suffers from permanent partial vision loss. (*Id.* at 22). In support of Plaintiff's allegations against Defendant Amin, Plaintiff attaches documents from Adventist Health. (*See id.* at 155-165 (Plaintiff's exhibit #7)).

Plaintiff also alleges several claims against numerous defendants based on events that happened after the incident with Defendants J. Garcia and Fugate.

Plaintiff alleges that after Plaintiff was transported back to the prison from the hospital, he was placed in administrative segregation unit (A.S.U) and wrongfully charged with three different charges for battery of a peace officer. (*Id.* at 14, 16). Custody made an intent to transfer Plaintiff to S.V.S.P. (Salinas Valley State Prison) on February 13, 2019[2], a day after the incident with Defendants J. Garcia and Fugate, to get rid of the problem and sweep it under the rug. By transferring Plaintiff, the assault on Plaintiff could be covered up. However, medical refused to be part of the cover up because Plaintiff was still bleeding from his nose, and so medical refused to clear Plaintiff for travel or transfer, even though Plaintiff agreed to the transfer to avoid further retaliation or issues with the prison's custody. (*Id.* at 14).

Plaintiff also alleges that Defendant E. Garcia's "intent" to censor Plaintiff's first administrative complaint violated Plaintiff's Eighth Amendment and First Amendment rights. Plaintiff alleges that on February 19, 2019, Plaintiff filed the required grievance in regard to the excessive use of force incident involving Defendants J. Garcia and Fugate in a good faith effort to exhaust his administrative remedies. However, Plaintiff's grievance was lost by custody in an effort to prevent Plaintiff's grievance from going forward with the facts and to prevent proper exhaustion. Plaintiff filed a separate CDC-602 grievance regarding the lost or misplaced excessive use of force grievance that did not make it to its destiny, "conveniently for defendants." Plaintiff made a copy prior to sending out the grievance. Defendant Garcia picked up the mail on

---

[2] Plaintiff's complaint states this date as 2022, but Plaintiff's complaint indicates the relevant incident took place in 2019.

February 13, 2019, and signed a CDC-22, acknowledging that he was picking up the mail/grievance. Plaintiff made the copy so that he could have proof in the future if this was to happen. According to Plaintiff, this proves that custody worked together to censor the incident and the complaint. (*Id.* at 17-18). In support of these allegations, Plaintiff attaches documents from the Office of Appeals regarding the processing of Plaintiff's administrative grievance. (*Id.* at 57-68 (Plaintiff's Exhibit #5)).

In another group of claims, Plaintiff alleges that he was left in administrative segregation for a period of about eight months, during which Plaintiff suffered due to constant retaliation by the officers responsible for passing out meals and the staff responsible for providing medical attention. Plaintiff alleges that he was continuously was ill from the food provided by custody. Plaintiff would report this to medical staff, but they ignored any 7362 (CDCR medical form) request regarding foodborne illness. Plaintiff developed a rash all over his body and was taken to a dermatologist due to the painful rash and hair loss. Plaintiff also suffered stomach pains, headaches, and intestinal pain in the liver and kidney. Plaintiff alleges that these reactions are caused by chemical contaminants. Plaintiff alleges that medical would act as if Plaintiff was not experiencing these symptoms. Plaintiff's only effective medicine was to force himself to vomit the food. (*Id.* at 16).

Plaintiff stopped consuming a lot of his provided meals and was forced to purchase food from the canteen prison store to stay alive. Plaintiff was not aware of how long he would be housed in administrative segregation. At the time, Plaintiff hoped that the money in his account would not run out. However, when Plaintiff was ordered to pay a court fee in another § 1983 civil case, he was unable to do so. Plaintiff was cautious to not run out of money while in administrative segregation. Plaintiff was not able to make the court aware of his situation for fear of continuing and worsening retaliation. Plaintiff's complaint was dismissed without prejudice due to Plaintiff's inability to pay the filing fees requested. Thus, Plaintiff was forced to wait for a better time to file the § 1983 motion. (*Id.* at 17).

Due to the cruel and continuous retaliation against Plaintiff, Plaintiff was forced to file a petition for a writ of habeas corpus, (*see id.* at 49-51 (Plaintiff's Exhibit # 3)), in a desperate attempt to make them stop the abuses, mistreatment, and tampering of Plaintiff's state meals that

Plaintiff was constitutionally entitled to. But even this request for justice did not stop the mistreatment. The abuses continued without any regard to prison rules, human, suffering, or the consequences of violating prison policy. Although Plaintiff filed a CDC-602 complaint, it did not work to stop the constant retaliatory practices. (*Id.* at 20).

As support for Plaintiff's allegations of meal tampering, Plaintiff attaches the dermatology report that Plaintiff requested after Plaintiff was taken to see a dermatologist due to the rashes and bald spots caused by the reaction Plaintiff's body had to the chemicals that made Plaintiff sick while Plaintiff was in administrative segregation (*See id.* at 44-47 (Plaintiff's Exhibit #2)). Plaintiff also attaches 602 grievance form dated July 30, 2019 (*see id.* at 52-65 (Plaintiff's Exhibit #4)), and fifty-nine 7362 CDCR Medical Request Form copies as proof that Plaintiff was constantly requesting medical attention as required by protocol, but without any positive results (*See id.* at 69-154 (Plaintiff's Exhibit #6)).[3] (*Id.* at 21).

## III.   ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A.   Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh*

---

[3] The Court notes that the documents included in this exhibit are mostly illegible.

*v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs*., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own

culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

B.    Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that Defendant J. Garcia repeatedly hit Plaintiff's head with either a metal baton or flashlight. Plaintiff also alleges that during this attack, Defendant Fugate threw Plaintiff down to the ground and that Defendants J. Garcia and Fugate proceeded to punch and kick Plaintiff once he was on the ground. Plaintiff alleges that both defendants continued to strike Plaintiff with the metal object, which caused Plaintiff to bleed from the top of his head, nose, and lips. Moreover, Plaintiff alleges that this attack took place while he was handcuffed.

Based on the allegations in Plaintiff's complaint, the Court finds that Plaintiff sufficiently alleges that Defendants J. Garcia and Fugate used force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Accordingly, the Court

finds that Plaintiff's Eighth Amendment excessive force claims against Defendants J. Garcia and Fugate should proceed past screening.

C.      Failure to Protect

To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). A prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847).

Here, Plaintiff alleges that Defendant John Doe #1 watched Defendants J. Garcia and Fugate hit Plaintiff while he was on the ground and saw that Plaintiff was bleeding. Plaintiff also alleges that Defendant John Doe #1 failed to intervene and prevent further harm to Plaintiff. Based on these allegations, the Court finds that Plaintiff sufficiently alleges that Defendant John Doe #1 was aware of a substantial risk of serious harm to Plaintiff but disregarded that risk by failing to take appropriate action. Accordingly, the Court finds that Plaintiff's Eighth Amendment failure to protect claim against Defendant John Doe #1 should proceed past screening.

D.      Retaliation

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm,' *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009), that is 'more than minimal,' *Rhodes*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged

retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original). While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by *Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes*, 408 F.3d at 567.

Plaintiff alleges that Defendants Neve, J. Garcia, and Fugate and retaliated against Plaintiff because Plaintiff had voiced concerns regarding tampered meals and because Plaintiff had previously filed grievances against Defendant Neve and unidentified CDCR officers. Plaintiff alleges that Defendant Neve took adverse action against him by falsely accusing Plaintiff of battering Defendant Neve. Plaintiff alleges that Defendants J. Garcia and Fugate took adverse action against Plaintiff by beating him while he was handcuffed.

These allegations are insufficient to state a retaliation claim against Defendants Neve, J. Garcia and Fugate. Plaintiff does not provide facts that, if true, would demonstrate that Defendant Neve's false accusation was done in retaliation for Plaintiff's complaints about his meals. Plaintiff does not allege any facts regarding these confrontations that suggest a connection between Plaintiff's complaints and Defendant Neve's actions. Further, Plaintiff does not sufficiently allege that Defendants J. Garcia and Fugate were even aware of Defendant Neve's accusations or Plaintiff's prior grievances. Accordingly, Plaintiff fails to sufficiently plead a retaliation claim against any defendant.

E.      Conspiracy

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting W*oodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the

13

exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989)). Additionally, Plaintiff must show that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." *Sykes v. State of California*, 497 F.2d 197, 200 (9th Cir. 1974). "[M]ore than vague conclusory allegations are required to state a [conspiracy] claim." *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).

To state a cause of action under 42 U.S.C. § 1985(3), a plaintiff "must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971)). "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Additionally, section 1985(3) only applies where there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102 (footnote omitted).

To the extent that Plaintiff's complaint alleges a conspiracy between Defendants Neve, J. Garcia, Fugate, Clark, and unidentified Salinas Valley prison staff to wrongfully charge Plaintiff with battery on a peace officer and to transfer Plaintiff to another institution, Plaintiffs allegations are vague and conclusory. Plaintiff does not allege anything these individuals said or that he observed that would support the allegation that they conspired together to deprive him of his full constitutional rights. Accordingly, Plaintiff's complaint fails to state a claim against any defendant for conspiracy.

F.     Cover-up

A plaintiff's right to meaningful access to the courts is denied when a defendant "engages in pre-filing actions which effectively covers-up evidence and actually renders any state court remedies ineffective." *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998). However, while a

plaintiff's action remains pending, it is impossible to determine whether a court's remedy will be ineffective because of defendant's actions. *Id.* at 1222-23; *see also Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 625 (9th Cir. 1988) ("[A]llegations [that defendants falsified fats and destroyed evidence and documents] may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit."); *Dell v. Espinoza*, 2017 WL 531893, at *7 (E.D. Cal. Feb. 7, 2017) ("Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up. A cover-up claim is premature when … Plaintiff's action seeking redress for the underlying constitutional violations remains pending.") (citations omitted).

Here, Plaintiff alleges that defendants engaged in a cover-up of the excessive force that was issued against him. However, Plaintiff does not specifically allege which defendants who are responsible for this cover-up or what evidence he believes was covered up. Moreover, Plaintiff's cover-up claim is premature and not ripe for judicial consideration. Here, the Court has found that Plaintiff's constitutional claims arising from the excessive force incident should proceed past screening. As Plaintiff's case remains pending in this Court, the Court will recommend that Plaintiff's cover-up claim be dismissed without prejudice. *Karim-Panahi*, 839 F.2d at 625 ("Because the ultimate resolution of the present suit remains in doubt, Karim-Panahi's cover-up claim is not ripe for judicial consideration. Accordingly, the district court was correct in dismissing the claim, but should have dismissed without prejudice.").

G.      Deliberately False Allegations/ *Deveraux* Claim

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Coakley v. Murphy*, 884 F.2d 1218, 1220 (9th Cir.1989). A liberty interest may arise from the Constitution itself, or from an expectation or interest created by state law or prison regulations. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

In the criminal context and in the context of certain administrative proceedings,

deliberately false allegations can give rise to a due process claim where there was a resulting deprivation of liberty. *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101 (9th Cir. 2010) (denying summary judgment on a fabrication of evidence claim against a defendant based on evidence that the defendant falsified evidence that was used in an administrative proceeding, and which led to the revocation of Plaintiff's foster care license and loss of guardianship of two minor children); *Chappell v. Bess*, 2012 WL 3276984, at *22 (E.D. Cal. Aug. 9, 2012) ("The court finds that plaintiff has alleged the deprivation of a cognizable liberty interest based on his allegations that, as a result of defendants' alleged fabrication of evidence, plaintiff was subjected to unwarranted disciplinary proceedings and criminal prosecution, and was retained in administrative segregation for more than two years, the latter, particularly if unwarranted, constituting an atypical and significant hardship ... in relation to the ordinary incidents of prison life." (alteration in original) (citation and internal quotation marks omitted)).

   "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted). In addition, a plaintiff must wait until the criminal case finishes before bringing the action. *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (holding an acquitted plaintiff "could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution").

   Here, Plaintiff alleges that he was wrongfully charged with three charges for battery of a peace officer. Plaintiff vaguely alleges that this was based on Defendant Neve's false accusation against Plaintiff. However, Plaintiff's complaint does not indicate whether these charges resulted

in a state criminal case against him, whether that case remains pending, or whether that case has terminated in Plaintiff's favor. Further, Plaintiff's complaint does not specifically identify any other defendant who he believes deliberately fabricated evidence. Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim for deliberate fabrication of evidence against any defendant.

> H.    Failure to Process Grievances

Plaintiff also seeks to hold Defendant E. Garcia liable for improperly processing his 602 grievance forms. Plaintiff alleges that Defendant E. Garcia was attempting to protect custody staff by censoring his complaints regarding the excessive force incident.

However, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). Therefore, challenges to the adequacy of the administrative remedy procedure or the disposition of Plaintiff's grievance fail to state a due process claim. *See Garcia v. Seeley*, No. 19-56128, 2021 WL 1753815, at *1 (9th Cir. May 4, 2021) (holding that prisoner "did not plausibly allege violation of his right to due process because prisoners do not have a liberty interest in a particular grievance procedure"); *Yoon v. Arnett*, 385 F. App'x 666, 668 (9th Cir. 2010) (holding that "the district court properly dismissed any due process claim [prisoner] sought to allege based on defendants' alleged failure to respond to, and interference with, [prisoner]'s administrative grievances, because he has no due process right to the handling of grievances in any particular manner").

While Plaintiffs' allegations may be relevant to the issue of exhaustion of administrative remedies in litigating his claims, they do not set forth an independent constitutional claim.

> I.    Deliberate Indifference to a Serious Medical Need

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges that Defendant Clark failed to properly document all of Plaintiff's injuries after Plaintiff was taken to the C.T.C. following the use of force incident with Defendants J. Garcia and Fugate. Plaintiff also alleges that Defendant Clark's report improperly included statements that called into question Plaintiff's state of mind. These allegations fail to allege that Defendant Clark knew that Plaintiff had a serious medical need yet disregarded that need. To the extent that Plaintiff alleges that Defendant Clark failed to take appropriate steps regarding a potential concussion, Plaintiff does not explain what act or treatment Defendant Clark failed to do

or any harm that was caused by Defendant Clark's inaction.

Plaintiff also alleges that following the use of force incident he was taken to an outside hospital where he received inadequate care from the attending physician, Defendant Amin, and that this inadequate care is a contributing factor to Plaintiff's continuing problem with eye. Further, Plaintiff alleges that he should have been placed in observation because he has a history of seizures. These conclusory allegations fail to allege that Defendant Amin knew that Plaintiff had a serious medical need yet purposefully disregarded that need.

Accordingly, Plaintiff fails to state a claim for deliberate medical indifference to a serious medical need against any defendant.

J.      State Law Claims

Plaintiff brings a claim for medical negligence under state tort law. California's Government Claims Act requires that a claim against the State[4] or its employees "relating to a cause of action for death or for injury to person or to personal property" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Superior Court of Kings County* (Bodde), 32 Cal.4th 1234, 1245 (Cal. 2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. *Bodde*, 32 Cal.4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988). However, Plaintiff has not pled compliance with California's Government Claims Act. Accordingly, Plaintiff fails to state a state law claim against any defendant.

Further, Plaintiff fails to state a claim for medical negligence. To state a claim for medical negligence under California law, Plaintiff must establish "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent

---

[4] "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Sampson v. Ukiah Valley Med. Ctr.*, 2017 WL 2834001, at *3 (N.D. Cal., June 30, 2017) (quoting *Machado v. Cal. Dep't of Corrs. and Rehab.*, 2013 WL 5800380, at *5 (N.D. Cal., Oct. 28, 2013)).

Here, Plaintiff fails to allege that Defendant Clark's failure to check for any potential concussion or failure to follow the applicable standard of care in recording Plaintiff's injuries caused any injury or harm to Plaintiff. Plaintiff's complaint alleges that, following examination of Plaintiff, Defendant Clark rushed Plaintiff to an outside hospital for further care for his injuries. Plaintiff also fails to specifically allege any action performed or not performed by Defendant Amin that caused Plaintiff's eye injury. Accordingly, Plaintiff fails to state a claim for medical negligence against any defendant.

K.     Federal Rules of Civil Procedure 18 & 20

A complaint must comply with the requirements of Federal Rules of Civil Procedure 18 and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2). "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." *K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013) (alterations in original) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. App'x. 791 (9th Cir. 2015); *see also* Fed. R. Civ. P. 20(a)(2) ("Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or

arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("[T]he 'same transaction' requirement[] refers to similarity in the factual background of a claim.").

"Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party." *Washington v. Fresno County Sheriff*, 2014 WL 641137, at *2 (E.D. Cal., Feb. 18, 2014); *Williams v. Madera Police Dept.*, 2012 WL 3068944, at *3 (E.D. Cal., July 26, 2012) (same); *Miller v. Kernan*, 2017 WL 590259, at *3 (E.D. Cal., Feb. 14, 2017) (same); *Solomon v. Carrasco*, 2012 WL 3744666, at *3 (E.D. Cal., Aug. 28, 2012) (same).

In addition to the claims analyzed above, stemming from a use of force on February 12, 2019, Plaintiff also brings claims based on events that occurred after Plaintiff was placed in administrative segregation.[5] They involve different defendants and rely upon a completely different set of facts than Plaintiff's claims regarding the excessive force incident, the medical care received after the incident, and the improper processing of Plaintiff's grievances. Thus, these claims are unrelated and cannot all be brought in this suit. As Plaintiff's complaint fails to comply with Rules 18 and 20, the Court will recommend that Plaintiff's claims arising after Plaintiff was placed in administrative be dismissed without prejudice.

## IV. RECOMMENDATION AND ORDER

The Court has screened Plaintiff's complaint and finds that Plaintiff's Eighth Amendment claims against Defendants J. Garcia and Fugate for excessive force and on Plaintiff's Eighth Amendment failure to protect claim against Defendant John Doe #1 should proceed past screening. The Court will also recommend that all other claims and defendants be dismissed.

The Court will not recommend that further leave to amend be granted. In the Court's prior screening order, the Court identified deficiencies in Plaintiff's complaint, provided Plaintiff with

---

[5] The Court notes that any First Amendment retaliation claim or Eighth Amendment deliberate indifference to a serious medical need claim brought by Plaintiff based on events that occurred during the time he was housed in administrative segregation would not be related to Plaintiff's other retaliation and deliberate indifference claims by virtue of being the same type of claim. For purposes of Federal Rules 18 and 20, the relevant consideration is whether the claims arise out of the same transaction or occurrence. *See e.g.*, Fed. R. Civ. P. 18(a), 20(a)(2).

relevant legal standards, and provided an opportunity to amend his complaint. Plaintiff chose to stand on his complaint.

Accordingly, based on the foregoing, the Court RECOMMENDS that:

1. This case proceed on Plaintiff's Eighth Amendment claims against Defendants J. Garcia and Fugate for excessive force and on Plaintiff's Eighth Amendment failure to protect claim against Defendant John Doe #1;

2. Plaintiff's First Amendment retaliation claims against Defendants Neve, J. Garcia, and Fugate be dismissed for failure to state a claim;

3. To the extent Plaintiff brings Section 1983 claims for conspiracy against any defendant, these claims be dismissed for failure to state a claim;

4. To the extent Plaintiff brings a Sixth Amendment claim based on an alleged cover-up against any defendant, these claims be dismissed as not ripe for judicial consideration, without prejudice;

5. To the extent Plaintiff brings Due Process claims for deliberate fabrication of evidence against any defendant, these claims be dismissed for failure to state a claim;

6. Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Clark and Amin be dismissed for failure to state a claim;

7. Plaintiff's state law medical negligence claims against Defendants Clark and Amin be dismissed for failure to allege compliance with the Government Claims Act and for failure to state a claim;

8. To the extent Plaintiff brings claims based on improper handling of Plaintiff's grievances against Defendant E. Garcia, these claims be dismissed for failure to state a claim; and

9. To the extent Plaintiff brings unrelated claims based on events arising after Plaintiff was placed in administrative segregation against any defendant, these claims be dismissed without prejudice to Plaintiff filing such claims in a separate action.

These findings and recommendations are submitted to the United States district judge

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Finally, IT IS ORDERED, that the Clerk of Court is respectfully directed to assign a District Judge.

IT IS SO ORDERED.

Dated:  __**October 10, 2023**__          ___/s/ Erica P. Grosjean___
                                          UNITED STATES MAGISTRATE JUDGE